AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| United States of America<br>v.<br><br>RILEY D. KASPER<br><br>_____<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>) | Case: 1:22-mj-00064<br>Assigned To : Meriweather, Robin M.<br>Assign. Date : 3/15/2022<br>Description: Arrest Warrant with Complaint |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* _____ RILEY D. KASPER _____ ,
who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment     ❏ Superseding Indictment     ❏ Information     ❏ Superseding Information     ☒ Complaint
❏ Probation Violation Petition     ❏ Supervised Release Violation Petition     ❏ Violation Notice     ❏ Order of the Court

This offense is briefly described as follows:

18 U.S.C. §§ 111(a)(1) and (b) - Assaulting, Resisting, or Impeding Certain Officers Using a Deadly or Dangerous Weapon to Inflict Bodily Injury,
18 U.S.C. § 231(a)(3) - Civil Disorder,
18 U.S.C. § 1752(a)(1) & (b)(1)(A) - Entering and Remaining in a Restricted  Building or Grounds with a Deadly or Dangerous Weapon,
18 U.S.C. § 1752(a)(2) & (b)(1)(A) - Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon,
18 U.S.C. § 1752(a)(4) & (b)(1)(A) - Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon,
40 U.S.C. § 5104(e)(2)(F) - Act of Physical Violence in the Capitol Grounds or Buildings.

Date:     03/15/2022          _____     2022.03.15 17:46:38 -04'00'
                                                *Issuing officer's signature*

City and state:          Washington, D.C.          Robin M. Meriweather, U.S. Magistrate Judge
                                                          *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)*   3/15/2022  , and the person was arrested on *(date)*   3/16/2022<br>at *(city and state)*       Ashland, Wisconsin       .<br><br>Date:       3/17/2022          _____<br>                                          *Arresting officer's signature*<br><br>                                          Justin Mosiman, Special Agent<br>                                          *Printed name and title* |

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| United States of America<br>v.<br>RILEY D. KASPER<br>DOB: ███ 1998<br><br>_Defendant(s)_ | ) Case: 1:22-mj-00064<br>) Assigned To : Meriweather, Robin M.<br>) Assign. Date : 3/15/2022<br>) Description: Arrest Warrant with Complaint<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____January 6, 2021_____ in the county of _____ in the _____ in the District of _____Columbia_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 111(a)(1) and (b) | **-** Assaulting, Resisting, or Impeding Certain Officers Using a Deadly or Dangerous Weapon to Inflict Bodily Injury, |
| 18 U.S.C. § 231(a)(3) | - Civil Disorder, |
| 18 U.S.C. § 1752(a)(1) & (b)(1)(A) | - Entering and Remaining in a Restricted  Building or Grounds with a Deadly or Dangerous Weapon, |
| 18 U.S.C. § 1752(a)(2) & (b)(1)(A) | - Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, |
| 18 U.S.C. § 1752(a)(4) & (b)(1)(A) | - Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, |
| 40 U.S.C. § 5104(e)(2)(F) | - Act of Physical Violence in the Capitol Grounds or Buildings. |

This criminal complaint is based on these facts:

See attached statement of facts.

X Continued on the attached sheet.

_____
_Complainant's signature_

Justin Mosiman, Special Agent
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
by telephone.

Date: _____03/15/2022_____

2022.03.15
17:47:10 -04'00'
_Judge's signature_

City and state: _____Washington, D.C._____

Robin M. Meriweather, U.S. Magistrate Judge
_Printed name and title_

Assigned To : Meriweather, Robin M.
Assign. Date : 3/15/2022
Description: Arrest Warrant with Complaint

## STATEMENT OF FACTS

Your Affiant, Justin Mosiman, is a Special Agent assigned to the Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force in Milwaukee.  In my duties as a special agent, I investigate a variety of federal crimes.  Currently, my duties include investigating criminal activity in and around the United States Capitol grounds on January 6, 2021.  As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The United States Capitol is secured 24 hours a day by United States Capitol Police. Restrictions around the United States Capitol include permanent and temporary security barriers and posts manned by United States Capitol Police.  Only authorized people with appropriate identification were allowed access inside the United States Capitol.  On January 6, 2021, the exterior plaza of the United States Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

The following facts pertain to Riley D. KASPER's violations of federal law on January 6, 2021, including his assault on federal law enforcement officers with what appears to be pepper spray.

On January 18, 2021, the FBI received a tip from a confidential human source ("CS-1"), which included screenshots of a January 7, 2021, Facebook post by Riley D. Kasper of Green Bay, Wisconsin, containing images of locations appearing to be in Washington, D.C., with the caption, "Trump rally Washington, D.C.!" One such screenshot is reproduced here:



Open-source videos show a person wearing a gray-patterned jacket, camouflage facemask and head covering, and tan camouflage backpack at the Capitol during the riot of January 6, 2021. One of the videos (https://www.youtube.com/watch?v=wIFpSg-6HIc) ("YouTube Video 1") shows that person spraying an aerosol canister of what is believed to be pepper spray toward federal law enforcement officers (U.S. Capitol Police and Metropolitan Police Department ("MPD") officers) that were standing between the Capitol building and the rioters.[1] The next three images below were captured from YouTube Video 1:

---

[1] Based on the size and appearance of the aerosol canister, it appears to be a product commonly marketed as one that is designed to deter a bear attack, commonly known as "bear spray."



The following image is a screenshot after zooming in on YouTube Video 1, and shows the same person spraying an orange substance consistent with pepper spray:





Another YouTube video (https://www.youtube.com/watch?v=rnGXNnHQfms) ("YouTube Video 2"), also recorded at the Capitol on January 6, 2021, shows a person wearing the same gray-patterned jacket, camouflage facemask and head covering, and tan camouflage backpack as the person shown in YouTube Video 1. That person can be heard saying in YouTube Video 2 (at the 4:10 mark), "[inaudible] started chucking shit at the other cops; so we can't really say we were peaceful." The images below from YouTube Video 2 show the face of the person wearing that distinctive clothing and those distinctive accessories. The person indicated by the red box in the images from YouTube Video 1 above appears to be the same person as the one indicated in the red box in each of the two images from YouTube Video 2 below:



#1AAudits #1stAmendmentAudit #FricnMedia
US Capital building Main Stream Media equipment destroyed



#1AAudits #1stAmendmentAudit #FricnMedia
US Capital building Main Stream Media equipment destroyed

I have reviewed booking photos from Riley Douglas Kasper's arrests in 2015 and 2019 in Wisconsin, and compared those photos to the person in the images above (from YouTube Video 1 and YouTube Video 2, recorded at the Capitol on January 6, 2021). The person in Kasper's booking photos appears to be the same person indicated by the red boxes in the images above from YouTube Video 1 and YouTube Video 2. Below is a side-by-side comparison of the first image from YouTube Video 2 above and Kasper's 2015 and 2019 booking photos:

  

I also compared the three images above with Kasper's state-issued driver's license photo. The person in the three images above (from YouTube Video 2 and Kasper's 2015 and 2019 booking photos) appears to be the person in Kasper's driver's license photo.

During an interview, CS-1. positively identified Riley D. Kasper as the person shown in the following screenshot taken from YouTube Video 2. CS-1 knew Kasper from high school and was in the same grade as Kasper. CS-1 stated they were friends on Facebook and that on January 7, 2021, Kasper posted images and videos on Facebook of the January 6, 2021, Trump Rally in Washington, D.C., including a self-captured video in which he was wearing clothing consistent with the clothing shown in the screenshot below, which CS-1 identified as an image of Kasper.



On March 8, 2022, a family member of Kasper who has known Kasper all of Kasper's life identified him as the person shown in images recorded at the Capitol on January 6, 2021, and provided the following picture of Kasper, in which he appears to be wearing the same hooded jacket that he was wearing in the images shown above (from YouTube Video 1 and YouTube Video 2):



In addition, Kasper's financial transaction records obtained during the investigation showed fuel purchases on a route from Wisconsin to and from the Washington, D.C., area between January 5, 2021, and January 7, 2021.

MPD-officer body-worn camera ("BWC") video footage recorded on January 6, 2021, shows an aerosol spray coming from the crowd at a high angle at 1:50 p.m. EST, from a person wearing clothing consistent with Kasper's, at nearly the exact opposite vantage point of YouTube Video 1. The BWC footage and YouTube Video 1 appear to show the same people in the crowd making the same movements. Thus, it appears the BWC footage and YouTube Video 1 recorded the same location at the same time.

Images from the BWC footage recorded at 1:50 p.m. EST are shown below:





The following image, recorded one second before the spray shown above, shows a person wearing clothing and a head/face covering consistent with Kasper's, who is holding a canister of what appears to be pepper spray in his right hand. The canister appears to be black with a white label, like the canister Kasper is shown to be spraying in the images from YouTube Video 1 above.



On November 2, 2021, Facebook user "Riley D. Kasper" was tagged in a photo on Facebook by I.H. I compared that photo to Kasper's driver's license photo, and the person in both photos appears to be the same.

On November 12, 2021, Magistrate Judge Robin Meriweather of the U.S. District Court for the District of Columbia issued a search warrant for Facebook account "riley.d.kasper." The content received pursuant to that search warrant provides the basis for the following statements regarding Kasper's activity on Facebook.

According to the records received from Facebook, the "verified" phone number for the account riley.d.kasper was a number ending in -8100. "Verified" indicates the account holder responded to a text sent to the listed phone number. According to records from AT&T, that number was subscribed to Kasper during the time relevant to this investigation.

On January 2, 2021, a post on Kasper's Facebook page included a photo of Donald Trump with a header of "TAKE AMERICA BACK" and a footer of "BE THERE WASHINGTON D.C. JANUARY 6, 2021 WILL BE WILD":



On January 5, 2021, a post on Kasper's Facebook page included a photo of a highway from the driver's perspective with the caption, "On the road to Washington D.C.!"



On January 6, 2021, a post on Kasper's Facebook page included eleven photos from the driver's perspective of various locations with location data resolving along the route from Wisconsin to Washington, D.C. The comment associated with the photos was, "The trip was long, but the road finally lead [sic] to Washington!" Samples of the photos are below:





On January 7, 2021, sixteen photos and three videos were posted to Kasper's Facebook page with the caption, "Trump rally Washington, D.C.!" The location data for those files was consistent with Washington, D.C. Some of the photos are below:





On January 6, 2021, Kasper sent private messages via Facebook to N.L. One message included a video of rioters pushing and breaking down a fence at the Capitol bearing an "AREA CLOSED" sign (a screenshot of the video is below).



When N.L. replied, "That's nuts you were right there when they pushed that fence back lol," Kasper responded, "Fuck yeah bro! I didnMt [sic] drive 14 hours for nothing."

Kasper then sent a series of messages including the following:

 a. "**I pepper sprayed 3 cops so bad they got undressed and went home**, gently brazed many others several times. I basically organized my own little militia and we fucking took over Congress" (emphasis added)

 b. "I mean the rest of the crowd gave support, but **as you see in that video it was my group that busted the first gate and kept chasing the cops down and pushing them back into the capital**" (emphasis added)

 c. "We got inside the capital then they started shooting rubber bullets at peoples heads, even when me and another guy were carrying a barely conciliatory dude with blood dripping off his knees from his head to the ambulance they kept shooting at the back of the 3 of us."

On or about January 7, 2021, Kasper sent the same video referenced above and the same messages set forth in the preceding paragraph, via Facebook to S.B. In addition, on January 7, 2021, Kasper sent the following private messages to S.B. as part of the same message thread:

 a. "I woke up at 3am on Tuesday packed up and shit, drove 18 hours and got to the train station at 5am yesterday and went straight to dressing and on the trump train. Then **fought cops all day** got pepper sprayed more times than I can count, maced, hit with batons, and fucking shot and then kept going until now my only sleep in all of that 48 hours of craziness was I parked at a truck stop from 2am to 4am just now." (emphasis added)

 b. "A lot of the people who were there are planning to go back on the 20th for Biden's inauguration or hopefully lack there of [sic]. You better not bitch out this time, I'm giving you a bunch of time to plan and prepare lol. If you're worried about the pepper spray and tear gas don't be, mostly works on Biden bitches lol. Tear gas is basically just a tiny bit worse than campfire smoke, actually campfire smoke hurts your eyes worse, but you get a tingling in your lungs when you get a breath of it. **Pepper spray is a bit worse, when you get hit it's fucking instant and for atleast [sic] 2 seconds you cannot open your eyes probably not even with your fingers** lol then it'll start being a bit better but your eyes will burn. If you keep water with you just splash it in your eyes and blink and it's just a little irritated but it's pretty much back to normal, definitely at that point you're ready to **grab your pepper spray and charge those fuckers**" (emphasis added)

 c. "**Dude cops are pussies, they absolutely do not want to get pepper sprayed!** You charge that line and **start spraying they start running for cover like you're coming at them with an ak** and then cause they pussy out I would blindly ram my body into The temporary fence they had there cause you know they fucking sprayed me on my charge but totally worth the 5-10 seconds of pain to have everyone charge

and move the fence back like 5-10 feet when the cops are running" (emphasis added)

d.  "That's how we took the capital"

e.  "Rubber bullets though, yeah those are different and should not even be legal. Rubber bullets is a misrepresentation. They're technically called less-than-lethal ammunition which only means it was not designed to kill, not that it won't kill you or fuck you up. . . . My advice, if they use rubber bullets I'd skip right to the real ones to shoot back"

f.  "Idk you just gotta come next time. **It's pretty exciting. It's like the most real version of paintball ever. But with pepper spray, flash bangs, and tear gas grenades to throw back at those bitches.** And a huge team of people who all got your back. And will beat the cops off of you if they ever get ahold of you" (emphasis added)

g.  "You have a paintball gun right? If so it will be dope, tomorrow I'm going to start making pepper balls (paintballs that explode capsicum dust on impact) they're intense. Pepper spray has 10% capsicum but the powder is pure. You'd own those bitches with that shit. **Pepper spray itself is wicked to where if you test your can by spraying it on the ground just the fumes from the tiniest squirt by your feet makes it feel like you got sprayed in the face. It's crazy**" (emphasis added)

h.  "I don't know what it is, can't quite put my finger on It. But **there is definitely something satisfying about <u>pepper spraying cops</u> in riot gear and watching them run from you like a bitch** even though they have face masks, billy clubs and full fucking body armor" (emphasis added)

During the same string of messages, the conversation then turned to a discussion of paintball guns.  Specifically, Kasper and S.B. discussed the fact that S.B. had a paintball gun that resembles an "ar" and has "full auto."  Kasper then wrote, "It would be dope to unleash the fully auto he'll [sic] on the cops but idk I think if you're gonna point something at a cop that looks like an ar it should probably just be an ar[.]"  Then he wrote, "I'm down if you wanna bring yours and I bring mine and together we'll take the fucking capital alone lol[.]"

Kasper then sent the following messages to S.B., in the same thread:

a.  "You didn't see the craziness and how packed it is, if after we're beating cops with fence panels and fulling [sic] their helmets and radios off of them and yanking them from their line into the crowd and just shoving him around between people so much he can't fucking stand up at that point any of the cops standing point with machine guns up top would potentially start shooting if they saw a black barrel with no orange tip sticking out of the crowd."

b. "Your gun isn't an exact replica but it looks real enough to a cop who's getting the shit beat of [sic] of them and has been pepper sprayed so much their eyes are blurry and watering"

c. "For about $80 we can get the shit to make almost 200 of these pepperball bitches. With the best active ingredient offered on the market. Literally has a 15yard radius of impact and is guaranteed to incapacitate anyone to the pound [sic] of gagging and choking and can't move for a few minutes if you actually hit them in the chest so it all puffs right in their face. But otherwise they're damn near like fucking tear gas canisters that you can shoot out of your paintball gun lol"

d. "Bro I've been going non stop for almost 60 hours. **Rioting is not easy work man**, climbing trees, scaffolding, buildings, pulling people up ledges so we can all charge the next fence together." (emphasis added)

e. "Fuck it while we're at it let's really do something crazy. They sell hard nylon paintballs with lead core. They're called jawbreakers"

f. "Lob a couple of those at those fucks and see wtf they think about rubber bullets"

g. "We're gonna be the hero's of the battle bro. We're gonna bring our paintball guns with fucking pepper balls, a **can of bear spray each**, a baton, taser and my extension ladder lol. Those cops will shit themselves when hundreds of us set up a latter and hold the bitch so they can't kick it down and start climbing up the roof with them and start pepper spraying and pepper balling them" (emphasis added)

h. "I'm on a war path with those capital police now. Before anything crazy happened I sat there at the fence talking to their dear gang and I told him we didn't want a fight and didn't want to hurt any of you. Just please go home, it's not worth it, we came to be heard and we're not leaving. And he straight just pulled out his pepper spray and fucked me right in the face and they all grabbed the fence and smashed it into me and the crowd around me. **I tried to mace him back** but I couldn't open my eyes so idk if I got him but I sure fucking tried lol. That video I sent you was right after that, literally I took a step back, poured water on my eyes while I was screaming fuck em then! If they want a fight then let's take the fucking house! Charge! Chucked my bottle at the cops and pressed record lol" (emphasis added)

i. "He laughed at me like I was stupid for thinking we could hurt then when I said we don't want to hurt you, just please go home. Legit 30 seconds later he was that guy that got knocked over under the fence and fucking trampled by the crowd"

j. "**As the day went on there were cops that started taking our advice and leaving**, idk if they quit cause they wanted to make it home alive or if their commander let them. **But yeah, one dude got pulled into the crowd and slammed on the ground on his back and his club, pepper spray, cuffs, radio everything got ripped from his belt, somehow I took out my baton and got right down in his face and screamed just go home then stood up offered him a hand to get up and give**

**him his radio back cause I had that** lol and he turned around and walked away and as far as I know left" (emphasis added)

    k.   "**I'm pretty sure dude thought he was gonna die that day lol**" (emphasis added)

Based on the foregoing, your Affiant submits that there is probable cause to believe that KASPER violated 18 U.S.C. §§ 111(a)(1) and 111(b), which make it a crime to assault, resist, oppose, impede, intimidate, or interfere with a federal law enforcement officer, as designated in Section 1114 of Title 18, while engaged in or on account of the performance of official duties, and in the commission of any such acts, to use a deadly or dangerous weapon or inflict bodily injury. Section 1114 specifically lists United States Capitol Police (USCP) officers as federal law enforcement officers. This definition under Section 1114 is further extended to any person assisting such a federal officer or employee in the performance of his or her duties or on account of that assistance. USCP officers are Federal law enforcement officers, and MPD officers were assisting them in protecting the Capitol and the Members of Congress on January 6, 2021.

Your Affiant submits there is also probable cause to believe that KASPER violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his or her official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your Affiant further submits that there is probable cause to believe that KASPER violated 18 U.S.C. §§ 1752(a)(1), (2), and (4), and (b)(1)(A), which make it a crime to (a)(1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; (a)(2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (a)(4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempt or conspire to do so; and (b)(1)(A) during and in relation to such offenses, use or carry a deadly or dangerous weapon. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Finally, your Affiant submits there also is probable cause to believe that KASPER violated 40 U.S.C. § 5104(e)(2)(F), which makes it a crime to willfully and knowingly engage in an act of physical violence in the Grounds or any of the Capitol buildings.

Justin Mosiman
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 15th day of March, 2022.

ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE

# COURTROOM MINUTES
# CRIMINAL

DATE: ___3/17/2022___  DAY: ___Thursday___  START TIME: ___1:03 PM___  END TIME: ___1:13 PM___

JUDGE/MAG.: ___S. Crocker___  CLERK: ___K. Frederickson___  REPORTER: ___FTR___

PROBATION OFFICER: ___M. Sutor___  INTERPRETER: _____  SWORN: YES ☐ NO ☐

CASE NUMBER: ___22-mj-37-slc___  CASE NAME: USA v. ___Riley D. Kasper___

PROCEEDING: ___Rule 5 Initial Appearance___

**APPEARANCES:**

ASST. U.S. ATTY.: ___Elizabeth Altman___  DEFENDANT ATTY.: ___Joe Bugni___

DEFENDANT PRESENT: ☒ YES ☐ NO ☐ EXCUSED BY COURT

Identity hearing, production of the warrant, and any preliminary or detention hearing waived

Defendant released on conditions; order entered

Defendant shall appear for a Zoom hearing on 3/22/2022 at 1:00 pm in the District of Columbia

TOTAL COURT TIME: ___10 min.___

# UNITED STATES DISTRICT COURT
### for the
### Western District of Wisconsin

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  22-mj-37-slc |
| | ) | |
| Riley D. Kasper | ) | |
| | ) | Charging District's Case No.   1:22-mj-00064 |
| *Defendant* | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*      District of Columbia      .

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise —
unless I am indicted — to determine whether there is probable cause to believe that an offense has
been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

❏     an identity hearing and production of the warrant.

❏     a preliminary hearing.

❏     a detention hearing.

☑     an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may
be entitled in this district.  I request that those hearings be held in the prosecuting district, at a time set
by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are
pending against me.

Date:      03/17/2022

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Joseph A. Bugni
*Printed name of defendant's attorney*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                   Plaintiff,

     v.

RILEY D. KASPER       ,

                  Defendant.

**RELEASE ORDER**

Case No. W.D. WIS: 22-MJ-37

D.D.C.: 22-MJ-64

For reasons stated on the record in this case, it is ORDERED that the above-named defendant shall be released during the pendency of this case upon defendant's promise to obey the following conditions of release:

### Standard Conditions for All Released Defendants

1.    Defendant shall not commit any offense in violation of federal, state or local law while on release.

2.    Defendant shall appear at all proceedings as required and shall surrender at the time and place directed by further court order for service of any sentence subsequently imposed in this case.

3.    Defendant shall report immediately to the U.S. Marshals Service for processing and then to Pretrial Services for a post-hearing interview.

4.    Defendant shall cooperate in the collection of a DNA sample as required by 18 U.S.C. § 3142(b).

5.    Defendant shall hereafter meet with Pretrial Services at the times and places directed and shall obey all directions and instructions of Pretrial Services.

6.    Defendant shall next appear at this location: ZOOM HEARING w/ MAG. JUDGE FARUQUI

    at this date and time: MARCH 22, 2022 AT 1:00 PM

7.    Defendant shall not engage in any undercover or informant activity on behalf of any government agency, except for a debriefing, without prior written approval of a district judge of this court.

8.    If defendant is charged with a felony, then defendant shall not ship, transport or receive any firearm or ammunition. Note that this is not a prohibition against the continued possession of firearms, which is addressed in condition number 15, below.

*01/18 Rev.*

9.  This court has a zero-tolerance policy for drug use by criminal defendants released on conditions. Violation of any condition of release or of any other direction or instruction given by Pretrial Services relating to drugs or drug use shall result in return to court for a hearing on the modification or revocation of conditions of release. To ensure the fair enforcement of this policy, every criminal defendant released on conditions shall be subjected to at least one random test for drug use.

    *Note Well*: If defendant has a drug or alcohol use problem, it is defendant's obligation to advise Pretrial Services *now* so that appropriate conditions can be considered and fashioned to address the problem.

10. Defendant shall surrender defendant's passport to the clerk of this court. If the defendant is acquitted or the charges are dismissed, then the clerk shall return the passport to the defendant. If the defendant is convicted, then the clerk shall send the passport and a copy of the judgment and conviction order to the U.S. State Department. Defendant shall not apply for a replacement passport while on pretrial release or while serving any sentence if convicted.

11. Defendant shall report in advance to Pretrial Services all changes in employment, residence, and telephone.

12. If defendant has any contact with any representative of any law enforcement agency regarding any criminal or traffic matter, then defendant shall report this contact to Pretrial Services within 24 hours of the contact.

**Additional Conditions**

____ 13. Defendant shall register with local law enforcement agencies as directed by Pretrial Services.

____ 14. Defendant shall seek and maintain employment in a manner approved by Pretrial Services.

X 15. Defendant shall not use or possess firearms, destructive devices, or other dangerous weapons.

____ 16. Defendant shall /abstain from any / refrain from excessive / use of alcohol.

____ 17. Defendant shall not associate in any manner with persons who use or possess controlled substances, or previously were known to use or possess controlled substances, and defendant shall avoid places where controlled substances are or were known to have been used, possessed or dispensed.

2

____ 18. Defendant shall not use, possess, buy or sell any illicit or narcotic drugs or any other controlled substance defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner with the knowledge of Pretrial Services. Defendant shall not use methadone or obtain a prescription for methadone.

____ 19. Defendant shall submit to urinalysis or other testing as directed by Pretrial Services to detect drug or alcohol use.

____ 20. Defendant shall undergo an Alcohol and Other Drug Assessment at the direction of Pretrial Services and shall comply with any instructions or directions given by Pretrial Services as a result of the assessment.

✗ 21. Defendant shall not associate with, speak to, telephone, text, email or have any contact whatsoever with these people:

SARA AND NEIL KASPER

If codefendants are listed above, this prohibition does not apply to association that occurs in the presence of the attorneys for all defendants during bona fide legal defense meetings.

✗ (22.) Defendant shall not travel outside the ~~following geographic area~~ WESTERN DISTRICT OF WISCONSIN except when traveling directly to this court or to the office of defendant's attorney for matters relating directly to this case, or when prior permission has been obtained from Pretrial Services:

DEFENDANT SHALL NOT ENTER THE DISTRICT OF COLUMBIA EXCEPT FOR SCHEDULED COURT APPEARANCES, SCHEDULED ATTORNEY MEETINGS, AND WITH ADVANCE NOTICE TO PTS.

____ 23. Defendant shall observe the following curfew:

Remain at this residence: _____

During these times: _____

Exceptions from this curfew must be approved in advance by Pretrial Services.

✗ 24. Defendant shall submit to location monitoring [~~radio frequency (RF)~~ or Global Positioning System (GPS)] as directed by Pretrial Services. Defendant shall not / shall / pay the cost of monitoring.

3

\_\_\_\_  25.  Defendant shall be placed in the third-party custody of these people:

_____

### Custodian's Promise to the Court

Each undersigned third-party custodian has read these conditions of release, understands what these conditions require the defendant to do and not to do, and promises the court that the custodian will:

(1)  Supervise the defendant to ensure that the defendant complies with these conditions of release;

(2)  Use every effort to ensure that the defendant appears as required at court proceedings in this case; and

(3)  Immediately notify Pretrial Services, the court, and if needed, local law enforcement authorities if defendant violates any release condition or if defendant appears to be planning to flee or actually flees.

Signed: _____  Date: _____

\_\_\_\_  26.  Defendant shall participate in mental health assessment, treatment and counseling as approved and directed by Pretrial Services. Defendant shall follow all treatment directives and take any medication prescribed by defendant's treatment provider, as approved by Pretrial Services. Defendant shall waive any patient-provider privilege as to this process so that Pretrial Services may oversee it properly. Defendant is responsible for obtaining funding for any required treatment, counseling or medications, with assistance from Pretrial Services.

\_\_\_\_  27.  Defendant shall notify third parties, including his employer, his clients and the financial institutions with which he conducts business, of the pending federal charges and shall permit Pretrial Services to make notifications and to confirm compliance with this condition.

X  28.  CONTACT PRETRIAL SERVICES EVERY WEEK AND PROVIDE REQUESTED INFORMATION.

X  29.  MAINTAIN A STABLE RESIDENCE.

4

**Notice of Penalties and Sanctions**

The defendant's violation of any of the conditions of release imposed in this order may result in the immediate issuance of a warrant for the defendant's arrest, the revocation of release, and an order of detention. It could also result in a separate prosecution for contempt under 18 U.S.C. § 401, which is punishable by a term of imprisonment and a fine. *See* 18 U.S.C. § 3148.

If the defendant commits a crime while released pursuant to this order and is later convicted of that new crime, then the defendant can also be prosecuted in federal court for having committed a crime while released, which is a violation of 18 U.S.C. § 3147. If the new offense is a felony, the defendant would face up to ten years in prison. If the new offense is a misdemeanor, the defendant would face up to one year in prison. Any sentence imposed for such a violation would be consecutive to any other sentence imposed upon the defendant.

It is a crime for the defendant knowingly to fail to appear as required by these conditions of release, or to fail to appear for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

1. An offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years or both;

2. An offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

3. Any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

4. A misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to a sentence of imprisonment for any other offense. *See* 18 U.S.C. § 3146.

It is a federal crime to intimidate, to influence, or to injure jurors or officers of the court or to attempt to do so. *See* 18 U.S.C. § 1503.

It is a federal crime to obstruct criminal investigations by bribery, or by disclosing the existence or content of subpoenas to financial institutions or the insurance industry. *See* 18 U.S.C. § 1510.

It is a federal crime to intimidate, to harass, to influence, or to injure witnesses, potential witnesses, victims or informants, or to threaten or attempt to do so. *See* 18 U.S.C. § 1512.

It is a federal crime to retaliate against a witness, victim or informant, or to threaten or attempt to do so. *See* 18 U.S.C. § 1513.

## Acknowledgment and Promise of the Defendant

I acknowledge that I am the defendant in this case.

I am aware of and I understand all of the conditions of release that have been imposed upon me.

I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed.

I am aware of and I understand the prohibitions and penalties set forth above in the Notice of Penalties and Sanctions section of this release order.

_____     3/17/22
Signature of Defendant                                            Date

## Directions to the United States Marshal

It is ORDERED that the Marshal shall:

__X__ Release the defendant after processing, in the ordinary course of the marshal's business.

_____ Detain the defendant in custody until notified by a judicial officer, the Clerk of Court, or the Pretrial Service Office that the defendant has complied with all conditions of release set in this order and therefore may be released on these conditions.

BY THE COURT:

_____     3-17-22
STEPHEN L. CROCKER                                    Date
Magistrate Judge

# U.S. District Court
## Western District of Wisconsin (Madison)
## CRIMINAL DOCKET FOR CASE #: 3:22-mj-00037-slc-1

Case title: USA v. Kasper, Riley D.                    Date Filed: 03/17/2022

Assigned to: Magistrate Judge Stephen L.
Crocker

**Defendant (1)**

**Riley D. Kasper**                    represented by    **Joseph Aragorn Bugni**
                                                         Federal Defender Services
                                                         22 East Mifflin Street, Suite 1000
                                                         Madison, WI 53703
                                                         608-260-9900
                                                         Fax: 608-260-9901
                                                         Email: Joseph_Bugni@fd.org
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Public Defender or*
                                                         *Community Defender Appointment*

**Pending Counts**                    **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                 **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                        **Disposition**

18 U.S.C. §§ 111(a)(1) and (b) -
Assaulting, Resisting, or Impeding Certain
Officers Using a Deadly or Dangerous
Weapon to Inflict Bodily Injury
18 U.S.C. § 231(a)(3) - Civil Disorder
18 U.S.C. § 1752(a)(1) & (b)(1)(A) -
Entering and Remaining in a Restricted
Building or Grounds with a Deadly or

Dangerous Weapon
18 U.S.C. § 1752(a)(2) & (b)(1)(A) -
Disorderly and Disruptive Conduct in a
Restricted Building or Grounds with a
Deadly or Dangerous Weapon
18 U.S.C. § 1752(a)(4) & (b)(1)(A) -
Engaging in Physical Violence in a
Restricted Building or Grounds with a
Deadly or Dangerous Weapon
40 U.S.C. § 5104(e)(2)(F) - Act of
Physical Violence in the Capitol Grounds
or Buildings

---

**Plaintiff**

**United States of America**                     represented by **Elizabeth Altman**
                                                 United States Attorney's Office
                                                 222 West Washington Avenue
                                                 Suite 700
                                                 Madison, WI 53703
                                                 608-264-5158
                                                 Fax: 608-264-5054
                                                 Email: elizabeth.altman@usdoj.gov
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Designation: Government*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/17/2022 | 5 | ORDER Setting Conditions of Release as to Riley D. Kasper. Signed by Magistrate Judge Stephen L. Crocker on 3/17/2022. (kwf) (Entered: 03/17/2022) |
| 03/17/2022 | 4 | Waiver of Identity Hearing by Riley D. Kasper. (kwf) (Entered: 03/17/2022) |
| 03/17/2022 | 3 | Minute Entry for proceedings held before Magistrate Judge Stephen L. Crocker: Initial Appearance on Rule 5 Arrest as to Riley D. Kasper held on 3/17/2022. Identity Hearing waived. Defendant released on conditions. [:10] (Court Reporter FTR.) (kwf) (Entered: 03/17/2022) |
| 03/17/2022 | | Arrest - Rule 5 of Riley D. Kasper. Initial Appearance - Rule 5 set for 3/17/2022 at 12:45 PM before Magistrate Judge Stephen L. Crocker. (kwf) (Entered: 03/17/2022) |
| 03/17/2022 | 2 | COMPLAINT - Redacted as to Riley D. Kasper. (Attachments: # 1 Statement of Facts) (kwf) (Entered: 03/17/2022) |
| 03/17/2022 | 1 | COMPLAINT as to Riley D. Kasper (1). (Sealed) (Attachments: # 1 Statement of Facts) (kwf) (Entered: 03/17/2022) |