# BRENNAN, McKENNA & LAWLOR, CHARTERED



### ATTORNEYS AT LAW

_____

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770                     MICHAEL E. LAWLOR, ESQ., PARTNER
TELEPHONE (301) 474-0044                      mlawlor@verizon.net
FAX (301) 474-5730

May 4, 2022

Joseph Gasper DeGaetano, Esquire
US Attorney's Office
1110 Market Street, Suite 515
Chattanooga, TN 37405

    Re:  <u>United States v. Riley D. Kasper</u>
        22-cr-00148 RCL

Dear AUSA DeGaetano:

   On behalf of Mr. Kasper, I am making a request pursuant to the Federal Rules of Criminal Procedure and Evidence for all discoverable evidence.

   It is my belief that the specifically requested material is discoverable under the Federal Rules of Criminal Procedure and/or Federal Rules of Evidence and/or under pertinent case law. In the event that you are unable or unwilling to provide the requested information, or if you disagree with any of the foregoing representations, please advise me promptly so that I may file any necessary motions. If I do not receive any such objection to specific requests or the actual requested material with 30 days of this request, I will (1) assume that this letter sets forth an accurate account of the government's discovery obligations, (2) rely upon that assumption in preparing for trial, (3) assume that material requested and not made available is not in the possession, custody or control of the government and (4) assume that the government will not seek introduction of such evidence in its case in chief, or in rebuttal or for impeachment purposes.

   I also make the following specific requests:

## A.  STATEMENTS: Pursuant to Fed.Crim.R. 16 (a)(1)(A):

   I am requesting that you permit me to inspect and copy all relevant oral, written or recorded statements made by my client that are within the possession, custody, or control of the government. Specifically, I am requesting that you disclose and make available for inspection, copying, or photographing:

   (1)  any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the

exercise of due diligence may become known, to the attorney for the government. This request includes internal reports and memoranda prepared by law enforcement agents to the extent that statements of the defendant are related or described. Where a defendant's statement is contained in more than one writing, please provide each such writing.;

     (2)    that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent and the substance of all statements and expressive conduct of the defendant in response to all *Miranda* warnings given to him, as well as all statements or questions concerning Fifth or Sixth Amendment rights. *See United States v. McElroy*, 697 F.2d 459 (2d Cir. 1982);

     (3)    and recorded testimony of the defendant, or of any person authorized to legally bind the defendant or to make admissions on the defendant's behalf, before a grand jury which relates to the offense charged.

     (4)    the substance of any other oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent. This request includes not only statements which the government intends to introduce at trial, but also statements which the government may "use" for impeachment or other purposes.

In addition, please furnish me with the names of, and any written and/or oral statements made by any co-defendant(s) or co-conspirator(s), *unindicted or indicted*, and/or juvenile co-respondent(s) in this case along with any written or otherwise recorded material purporting to memorialize any such statements. Please supply the names and addresses of all alleged coconspirators stated in the indictment as "known to the Grand Jury," as well as any others as they may become known to the government. *United States v. Ramirez*, 602 F.Supp. 783, 793 (S.D.N.Y. 1985); *United States v. Chovanec*, 467 F.Supp. 41, 46 (S.D.N.Y. 1979); *United States v. DeGroote*, 122, F.R.D. 131, 137 (W.D.N.Y. 1988). Please provide any written, recorded, or oral statement of coconspirators, whether or not indicted, made to a public servant engaged in law enforcement activity or to a person then acting under his or her direction or in cooperation with him, which the government intends to offer at trial.

Pursuant to the parameters of the above request, please let us know the circumstances of any statement.

With respect to the government's due diligence obligation, please provide the name and whereabouts of any government agent or witness who has had contact with the defendant but who has not been interviewed to determine whether the defendant made statements in his or her presence.

If there are alleged co-conspirators or government witnesses who are not charged in this indictment but are represented by counsel, please let me know their names and their counsel contact information.

**B.**    <u>**PRIOR RECORD:**</u>   Pursuant to Fed.Crim.R. 16 (a)(1)(B):

I am requesting certified copies of my client's prior criminal record, if any, which is known or should be known through the exercise of due diligence by the government. Specifically, I request that

you furnish me with a certified copy of the defendant's prior criminal record, if any, as is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the prosecutor.

## C.    <u>TANGIBLE EVIDENCE</u>: Pursuant to Fed.Crim.R. 16 (a)(1)(C):

I am requesting that you permit me to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places or copies of portions thereof, that are within the possession, control or custody of the government and that are either material to the preparation of my client's defense, or intended for use by the government as evidence in chief at trial, or were obtained from or belong to my client.

These documents I refer to include, *but are not limited to*:

(1) Any PD 123's, PD 255's, PD 252, PD 251, PD 163, PD 119's, PD 32, PD 36, or PD 118's, DEA-7's, PD81's, PD95's, PD82's, PD82-a's, DEA 86's, DEA/PD 107's, PD 285's, or the equivalent FBI/DEA/Secret Service/other law enforcement agency's forms, such as DEA 6's or FBI 302's, associated with the case

(2) All reports, memoranda, and manuals on the maintenance, repair, and use of machines and instruments which were, or may have been, used to test evidence seized in this case;

(3) All reports, logs and memoranda on the accuracy of machines and instruments which were, or may have been used to test evidence seized in this case;

(4) All memoranda, notes and reports relating to the handling, storage, chain of custody, and testing of evidence seized in this case;

(5) A computer printout of all radio communications;

(6) All written protocols and procedures followed by government agents when handling and testing evidence in this case;

(7) All written protocols and procedures followed by government agents when handling and testing items seized in this case;

(8) All training manuals, training memoranda, and training reports relating to the chain of custody, handling, and storage of evidence related to this case;

(9) All curriculum vitae of DEA chemists or other government agents who handled and /or tested items seized in this case.

(10) Copies of all photographs which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense, or are intended for use by the government at trial or were obtained from or belong to the defendant.

Please provide copies of any search warrants, warrant affidavits, warrant return forms, consent forms, and/or warrant inventories that were prepared in connection with this case.  Fed. R. Crim. P.

12(b)(3), 16(a)(1)(C), 41(c-d). If any items were seized, or searches conducted, without a warrant, please indicate the warrant exception pursuant to which the seizure or search occurred. U.S. Const. Amend. IV; Fed. R. Crim. P. 12(b)(3). Please provide copies of all documents that were obtained as a result of searches or seizures, whether with or without a warrant. Fed. R. Crim. P. 16(a)(1)(C), 41(c-e).

I request to be informed of any and all tangible evidence which is within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense, or are intended for use by the government at trial or were obtained from or belong to the defendant.

I request that I be provided with copies of all photographs which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense, or are intended for use by the government at trial or were obtained from or belong to the defendant.

Pursuant to Superior Court Rule of Criminal Procedure 16 and *Crawford v. Washington*, I request that you allow me to inspect and photograph any field test kit that was used in this case, and any material that was tested in the kit.

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(C), I am requesting that you preserve all documents and tangible objects relating to this case. This request includes, but it not limited to the above listed items. In the event that the government feels that it is necessary to relinquish possession, custody, or control of any or all of the above discoverable materials, please do so pursuant to 16(d)(1), providing me with an opportunity to inspect and copy or photograph such materials immediately.

Additionally, I request a viewing letter for any tangible evidence in the government's possession, custody, or control. I request that the viewing letter permit myself and my investigator to view the evidence and that we be given permission to photograph the evidence.

## D.     <u>REPORTS OF EXAMINATIONS AND TESTS AND EXPERT WITNESSES</u>:

Pursuant to Fed.Crim.R. 16 (a)(1)(D) and (E), I am requesting to inspect and copy or photograph any results or reports of physical or mental examinations, scientific experiments, or copies thereof, that are in the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the prosecutor, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

If such material exists, I request that you provide me with it immediately. If such material comes into existence at a later time, I request that you provide me with all such material as soon as it is completed, and in sufficient time for me to incorporate the material into my preparation for trial, including the possible need to seek alternate testing and/or the assistance of experts to examine the material provided or to testify concerning the material provided.

I am requesting a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the *Federal Rules of Evidence* during its case in chief at trial. If so, please provide me

with the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications.

I am providing notice that at trial, pursuant to the *Jencks* Act, I will be requesting copies of all transcripts in the government's possession of prior testimony concerning the matters on which you seek to call them by any expert witness that the government intends to call at trial.

## E.    **IDENTIFICATIONS:**

If there have been any out-of-court identifications of my client, or other form of identification procedure used in this case, I am requesting disclosure of that information and a duplicate of any photograph, photographic spread or lineup that was used or conducted as well as all documents or recordings which describe or memorialize the identification procedure(s).  I request that you inform me precisely how many witnesses allegedly identified my client, the type of identification procedures employed, the words of identification and/or actions indicating identification used by each witness, and the dates and locations of each alleged identification.  I further request that you inform me of the circumstances of each witness' observations and alleged identification, including but not limited to each witness' opportunity to observe, distance, lighting, and any other circumstances relating to the reliability of the alleged identifications.  *See In re F.G.,* 576 A.2d 724 (D.C. 1990). Please provide a description of any identification procedure employed in this case, including lineups, showups, photo arrays, or the display of the defendant's person, photograph or image to any witness.  In addition, please provide in detail any description provided by the wit-ness at any time prior to the identification procedure.  *See Neil v. Biggers*, 409 U.S. 188, 199 (1972).  If any witness has <u>failed</u> to identify the defendant after any identification procedure, please identify the witness and indicate the date and circumstances of the identification procedure.  *See Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 115 S.Ct. 1555 (1995).

## F.    **TAPE RECORDINGS**

Pursuant to Fed.Crim.R. 16 (a)(1)(C), I am requesting a copy of any 911 calls, TAC communications, video or audio surveillance, and all radio runs made in connection with this case. Because of their length, sound quality, and the necessity of transcribing them for use at trial, I request that you provide me with these items now to avoid delays once trial gets started.  In connection with these items I am requesting that you preserve any material not provided as well as any *Jencks* material in this case.  As you know, the government has a duty to preserve, even absent a discovery request, any and all *Jencks* material.

Please contact me when you receive information as to whether any such tapes exist.  Please let me know if you have a tape of such communications so that we can listen to and copy it.

I request that I be provided with any evidence of scout runs (broadcasts on unrecorded channels) that should appear in the papering notes, officers' notes or in any other source.

## G.    **404(b) Evidence**

I am requesting that I be provided with notice of all 404(b) evidence that the government intends to introduce at trial.  I request that you advise me in writing of the specific facts and

circumstances of the aforementioned uncharged misconduct including the names of any alleged complainants, and the legal theory which you will rely upon for seeking its admission.

For any 404(b) evidence you provide notice of, I request that you provide me with all discoverable information and evidence pertaining to this uncharged misconduct that you would be required to provide the defense if this uncharged misconduct was actually charged.

## H.   <u>Impeachment and Bias Material</u> (<u>Brady</u>)

I request the disclosure of all information to which I am entitled under *Brady v. Maryland,* 373 U.S. 83 (1963) in the above captioned case. The requested information includes all information material to guilt, punishment[1], and the credibility of government witnesses[2], including potential impeachment material for all government witnesses.[3] Failure to disclose impeachment information is the same, under *Brady*, as the failure to disclose exculpatory information.[4] This request includes impeachment material that may also fall under the Jencks Act.[5]

I am requesting a list of all law enforcement officers that you plan to call in this matter at any pretrial hearing or at trial.  I am also requesting that you examine and disclose pertinent *Brady* information from the personnel files of those officers who were involved in the charged incident and related investigation.  *See United States v. Brooks*, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992) (if specific request is made, prosecutor must search personnel records of police officer/witnesses to fulfill *Brady* obligations); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984); *United States v. Muse*, 708 F.2d 513, 516 (10th Cir. 1983) (recognizing that prosecutor must produce *Brady* material in personnel files of government agents even if they are in possession of another agency.).

The requested information includes all information that you or any part of the prosecution team "know or reasonably should know tends to negate the guilt of the accused or to mitigate the offense."[6]  Under *Brady* and its progeny, this request extends to all information known by all law

---

[1] *See Brady v. Maryland*, 373 U.S. 83, 87(1963).

[2] *See Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this rule.") (citations and internal quotation marks omitted).

[3] *See United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence … as well as exculpatory evidence falls within the *Brady* rule.").

[4] *See Bagley*, 473 U.S. at 676; *Sykes v. United States*, --A.2d.-- 2006 WL 564050, at *8  (D.C. March 9, 2006) ("[T]he grand jury testimony of Mr. Parrott and Mr. Sellers should have been disclosed to the defense at an earlier point in time, whether it was considered to be potentially exculpatory information or favorable impeaching evidence.").

[5] *See Boone v. United States*, 769 A.2d 811, 821 (D.C. 2001) (Although the coverage of *Brady* and the Jencks Act sometimes overlap, especially with respect to bias and impeachment material of potential government witnesses, when this overlap occurs the *Brady* rule must control and compel pre-trial disclosure.)

[6] *See* D.C. Rules of Professional Conduct, Rule 3.8. Special Responsibilities of a Prosecutor (2000): "The prosecutor in a criminal case shall not . . .(e) Intentionally fail to disclose to the defense, upon request and at a time when use by the defense is reasonably feasible, any evidence or information that the prosecutor knows or reasonably should know tends to negate the guilt of the accused or to mitigate

enforcement or other government agencies involved in this case, whether or not personally known to the individual prosecutor.[7]

# I.     TIMING OF BRADY DISCLOSURE

As is recommended by the ABA Standards, I respectfully request the material be turned over as soon as you learn of it.[8]  Pre-trial disclosure of statements that qualify as both *Jencks* material and *Brady* material should also be disclosed before trial to allow effective use in the preparation of the defense case.  Should you not comply with this request, and *Brady* material is delivered immediately before or during trial, I may be forced to seek sanctions and a continuance to evaluate the effect of these materials at trial.[9]

# II.    PRETRIAL DUTY TO DISCLOSE FAVORABLE EVIDENCE REGARDLESS OF MATERIALITY

I hereby request disclosure of all evidence in the government's possession that might reasonably be considered favorable to the defense, regardless of your determination of its materiality. In a pretrial posture, the government's duty to disclose all favorable evidence must be complied with without regard to the government's opinion of its materiality.

Recently, Judge Friedman ruled in *United States v. Safavian* that a materiality requirement is simply inapplicable to pretrial disclosure.[10]  As Judge Friedman explained, a materiality requirement is unsuitable to pretrial discovery:

---

the offense, or, in connection with sentencing, intentionally fail to disclose to the defense upon request any unprivileged mitigating information known to the prosecutor and not reasonably available to the defense, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

[7] *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (The duty of disclosure is not limited to evidence in the actual possession of the prosecutor. Rather, it extends to evidence in the possession of the entire prosecution team, which includes investigative and other government agencies.); *see also Strickler v. Greene*, 527 U.S. 263 275, n. 12 (1999) (Prosecutor has constructive knowledge of all favorable evidence known to those acting on the government's behalf, even if no actual knowledge of materials, and even if materials are in the file of another jurisdiction's prosecutor"; *United States v. Safavian*, 233 F.R.D. 205, 207 (D.D.C. 2006) (Prosecutor has a duty to search and disclose *Brady* evidence, within reason, in the possession of all Executive Branch agencies and departments, rather than solely the agencies "closely aligned" with the prosecution.)

[8] *See* ABA Standards for Criminal Justice, Prosecution Function, § 3-3.11(a) (c) (3d Ed. 1993) DISCLOSURE OF EVIDENCE BY THE PROSECUTOR ("A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused. … A prosecutor should not intentionally avoid pursuit of evidence because he or she believes it will damage the prosecution's case or aid the accused").

[9] *See Boone v. United States*, 769 A.2d 811, 821 (D.C. 2001).

[10] *See United States v. Safavian,* 233 F.R.D. 12,15 (D.D.C. 2005) ("The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable

Because the definition of "materiality" discussed in *Strickler* and other appellate cases is a standard articulated in the post-conviction context for appellate review, it is not the appropriate one for prosecutors to apply during the pretrial discovery phase. The only question before (and even during) trial is whether the evidence at issue may be "favorable to the accused"; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.

233 F.R.D. at 16; *See United States v. Sudikoff*, 36 F.Supp.2d 1196, 1198 (C.D. Cal. 1999); *United States v. Carter*, 313 F.Supp.2d 921, 925 (E.D. Wis. April 12, 2004) ("[I]n the pre-trial context, the court should require disclosure of favorable evidence under *Brady* and *Giglio* without attempting to analyze its 'materiality' at trial."); *see also Monroe v. Angelone*, 323 F.3d 286, 301 (4ᵗʰ Cir. 2003) (although the apparent redundancy of *Brady* information that comes to light post-trial may avert a finding of a constitutional violation, it "does not excuse disclosure obligations" pre-trial).

Although a lack of "materiality" may be a defense post-conviction to suppression of *Brady* information, a determination of materiality pre-trial is simply not appropriate. *See Lewis v. United States,* 408 A.2d 303, 306-07 (D.C. 1979) (although "the constitutional question commonly comes up retrospectively, the due process underpinning of *Brady-Agurs* is a command for disclosure Before an accused has to defend himself"). As explained in *Sudikoff*,

> This [materiality] standard is only appropriate, and thus applicable, in the context of appellate review. Whether disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighted against the presumed effect of the undisclosed *Brady* material. … This analysis obviously cannot be applied by a trial court facing a pretrial discovery request.

36 F.Supp.2d at 1198-99; *see also Carter*, 313 F.Supp.2d at 924 ("[T]he materiality prong presumes that the trial has already occurred and requires the court to determine whether the result could have been different had the evidence been disclosed. But a court deciding whether materiality should be disclosed prior to trial does not have the luxury of reviewing the trial record."); *Lewis*, 408 A.2d at 307 (requiring pre-trial disclosure of impeachable convictions of government witnesses "because there can be no objective, ad hoc way to evaluate before trial whether an impeachable conviction of a particular government witness will be material to the outcome. No one has that gift of prophecy.")

Just as a trial court cannot determine materiality before trial, neither can the United States Attorney's Office substitute its judgment of pretrial materiality. Accordingly, the United States Attorney's Office must disclose all information "favorable to an accused," *Brady*, 373 U.S. at 87, including all evidence relating to guilt or punishment and which tends to help the defense by either bolstering the defense's case or impeaching prosecution witnesses. *See Giglio*, 405 U.S. at 154-55; *Sykes*, --A.2d.-- 2006 WL 564050, at *8 ; *Safavian*, 233 F.R.D. at 15-16.

## III.    SCOPE OF BRADY DISCLOSURE

The defense definition of *Brady* is the same as Judge Friedman's definition as stated in *Safavian:*

---

evidence without regard to how the withholding of such evidence might be viewed -- with the benefit of hindsight -- as affecting the outcome of the trial.")

"It is any information in the possession of the government -- broadly defined to include all Executive Branch agencies -- that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses. It covers both exculpatory and impeachment evidence. The government is obligated to disclose all evidence relating to guilt or punishment which might be reasonably considered favorable to the defendant's case, that is, all favorable evidence that is itself admissible or that is likely to lead to favorable evidence that would be admissible, or that could be used to impeach a prosecution witness. Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure."

*Safavian* 233 F.R.D. at 15-16. However, if there is any ambiguity, the following are examples of evidence other courts have construed as *Brady*:

### INFORMATION REGARDING GOVERNMENT WITNESSES

> • **Exculpatory and/or impeachment Grand Jury Testimony.** *See Sykes v. United States*, -- A.2d.-- 2006 WL 564050  (D.C. 2006).

• **Agreements/Deals with government witnesses**. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154 (1972) (failure to disclose promise of immunity in exchange for testimony violates *Brady*); *United States v. Bagley*, 473 U.S. 667, 676, 682 (1985) (failure to disclose payment of $300 to two key government witnesses violates *Brady*); *Singh v. Prunty*, 142 F.3d 1157, 1161-63 (9th Cir. 1998) (failure to disclose that star witness had a very favorable deal with government to avoid a very serious charge is *Brady* violation); *United States v. Smith*, 77 F.3d 511, 513-16 (D.C. Cir. 1996) (failure to disclose a deal in which state charges were dismissed as part of a federal plea is *Brady* violation); *In Re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 891, 896 (D.C. Cir. 1999) (remand to determine *Brady* information with instruction to district court to require the U.S. Attorney's Office to review the records in the possession of the prosecution team for evidence indicating that a government informant who provided information leading to the defendant's arrest had a deal with the prosecution, the D.C. Circuit observed that it is "irrelevant . . . that the requested records may have been in the possession of the Metropolitan Police Department, of the FBI or DEA, rather than the U.S. Attorney's Office.").

> • **Payments to witnesses**: *See, e.g., Mastracchio v. Vose*, 274 F.3d 590, 602-03 (1st Cir. 2001) (knowledge of Witness payments or favors made by the Witness Protection team is *Brady*); *In re Sealed Case (Brady Obligations)*, 185 F.3d 887, 894 (D.C. Cir. 1999) (failure to disclose a cooperation agreement that included payments to a witness is *Brady* information).

> • **Criminal history of informants**: *See, e.g., Crivens v. Roth*, 172 F.3d 991, 996-99 (7th Cir. 1999) (failure to disclose crimes committed by government witness is *Brady* even when government witness used aliases); *Carriger v. Stewart*, 132 F.3d 463, 480-82 (9th Cir. 1997) (failure to obtain or disclose Department of Corrections file that would have showed lengthy criminal history, and history of lying to police and blaming others for his own crimes is *Brady*).

> • **Bias of government witnesses**: *See, e.g., Schledwitz v. United States*, 169 F.3d 1003, 1014-15 (6th Cir. 1999) (*Brady* obligation for government to reveal witness portrayed as neutral and

disinterested expert actually had been investigating defendant for years); *United States v. O'Connor*, 64 F.3d 355, 359-60 (8th Cir. 1995) (failure to disclose threats by one government witness against another and attempts by that same government witness to influence testimony of another government witness is *Brady*); *Reutter v. Solem*, 888 F.2d 578, 581-82 (8th Cir. 1989) (failure to inform defense that key witness had applied for commutation and was scheduled to appear before parole board in a few days is a *Brady* violation).

• **Personnel files, especially of testifying officers**: *See, e.g., United States v. Brooks*, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992) (if specific request is made, prosecutor must search personnel records of police officer/witnesses to fulfill *Brady* obligations); *United States v. Muse*, 708 F.2d 513, 516 (10th Cir. 1983) (recognizing that prosecutor must produce *Brady* material in personnel files of government agents even if they are in possession of another agency.).

• **Presentence Reports of testifying witnesses**: *See, e.g., United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988) (information in probation file relevant to government witness credibility must be disclosed, and could not be deemed privileged by making it part of probation file); *United States v. Carreon*, 11 F.3d 1225, 1238 (5th Cir. 1994) (prosecution should allow trial court to conduct in camera review of presentence reports of government witnesses to determine whether they contain *Brady/Giglio* material).

• **Misconduct by government witnesses**: *See, e.g., (Jerry) Bennett v. United States,* 797 A.2d 1251 (D.C. 2002)(lying or perjury in another murder case); (*Reginald) Bennett v. United States,* 763 A.2d 1117 (2001)(attempts to obstruct justice in witness' case); *United States v. Boyd*, 55 F.3d 239, 243-45 (7th Cir. 1995) (failure to disclose drug use and dealing by prosecution witness, and "continuous stream of unlawful favors" including phone privileges, presents, special visitors, provided by prosecution to witnesses is considered *Brady* material).

• **Police perjury in motions hearings**: *See, e.g., United States v. Cuffie*, 80 F.3d 514, 517-19 (D.C. Cir. 1996) (failure to disclose perjury by police officer during motion to seal proceeding is considered material *Brady* evidence relevant to impeachment ).

• **Knowledge of police intimidation of witnesses**: *See, e.g., Guerra v. Johnson*, 90 F.3d 1075, 1078-80 (5th Cir. 1996) (failure to disclose police intimidation of key witnesses and information regarding suspect seen carrying murder weapon minutes after shooting is considered *Brady*).

## *OTHER SUSPECT INFORMATION*

• **Contradictory eyewitness testimony**: *See, e.g., Clemmons v. Delo*, 124 F.3d 944, 949-52 (8th Cir. 1997) (failure to disclose internal government memo generated on day of prison killing which indicated that eyewitness saw someone else commit murder is *Brady*).

• **Prior identifications of other suspects**: *See, e.g., White v. Helling*, 194 F.3d 937, 944-46 (8th Cir. 1999) (habeas relief granted in 27 year old robbery/murder case because of failure to disclose that government's chief eyewitness had originally identified someone else and had identified defendant only after several meetings with police); *Hudson v. Whitley*, 979 F.2d 1058, 1065 (5th Cir. 1992) (remand on *Brady* grounds because of failure to disclose that the only eyewitness had originally identified third party, and that third party had originally been arrested).

• **Prior statements that eyewitness could not identify anyone:** *See, e.g., Spicer v. Roxbury*, 194 F.3d 547, 557-60 (4th Cir. 1999) (failure to disclose witness' prior inconsistent statement that he did not see defendant is *Brady*); *Lindsey v. King*, 769 F.2d 1034, 1041-43 (5th Cir. 1985) (failure to disclose initial statement of eyewitness that he could not make an ID because he never saw murderer's face is *Brady*).

• **Arrests/investigation of other suspects**. *See, e.g., Banks v. Reynolds*, 54 F.3d 1508, 1517, 1520 (10th Cir. 1995) (failure to reveal that another individual or individuals had been arrested for same crime was a <u>Brady</u> violation); *Smith v. Secretary of New Mexico Department of Corrections*, 50 F.3d 801, 829-835 (10th Cir. 1995) (failure to disclose information indicating that uncharged third party had committed the offense was a *Brady* violation); *Miller v. Angliker*, 848 F.2d 1312, 1321-23 (2d Cir. 1988) (failure to disclose information that would suggest another person committed offense is *Brady*); *Bowen v. Maynard*, 799 F.2d 593, 610-12 (10th Cir. 1986) (<u>Brady</u> violation where prosecution failed to disclose that police considered another man a suspect when the other man better fit the description of eyewitnesses; he was suspected by law enforcement in another state of being a hitman, and carried same weapon used in murders).

## *INCONSISTENT STATEMENTS*

• **Contradictory or inconsistent statements**: *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963) (failure to turn over statement by co-defendant that he had planned the killing, and that co-defendant had performed actual killing is violation of due process); *Kyles v. Whitley*, 514 U.S. 419 (1995) (failure to disclose inconsistent eyewitness and informant statements, and list of license numbers compiled by police that did not show Kyles' car in supermarket parking lot).

• **Inconsistent notes**: Prosecutor and law enforcement notes from interviews with government witness: *See, e.g., United States v. Service Deli, Inc.*, 151 F.3d 938, 943-44 (9th Cir. 1998) (*Brady* obligation to turn over original notes from witness interview that contained three key pieces of impeachment information that showed that story had changed, change may have been brought about by threats of imprisonment, and witness had claimed to have suffered a stroke); *United States v. Pelullo*, 105 F.3d 117, 122-23 (3d Cir. 1997) (failure to disclose rough notes of FBI and IRS agents corroborating defendant's version of events and impeaching testimony of government agents).

• **Statements of potential witnesses not called to testify**: *See, e.g., United States v. Frost*, 125 F.3d 346, 383-84 (6th Cir. 1997) (*Brady* violation when government does not disclose statement of potentially exculpatory witness, but instead tells defense that that witness would provide inculpatory information if called to testify).

• **Expert reports inconsistent with the government case or tends to support the defense case**: *See, e.g., Ex parte Mowbray*, 943 S.W.2d 461, 466 (Tex. Crim. App. 1996) (*Brady* violation when State failed to disclose exculpatory expert report);; *United States v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985) (*Brady* violation when government failed to disclose ballistics worksheet that showed gun defendant was accused of firing was inoperable); *State v. DelReal*, 593 N.W. 2d 461, 464, 466 (Wis. App. 1999) (*Brady* violation when government failed to disclose fact that a swab for gunshot residue had taken place, which would have provided defendant the

opportunity to have swabs tested and also would have allowed defendant to challenge reliability/credibility of police investigation and testimony).

• **Mitigating evidence in aid of sentencing**: *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963); ABA STANDARDS FOR CRIMINAL JUSTICE, PROSECUTION FUNCTION, § 3-6.2 (b) (3d Ed. 1993) Information Relevant to Sentencing ("The prosecutor should disclose to the defense and to the court at or prior to the sentencing all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.").

## IV.    WHERE TO LOOK FOR *BRADY*

I am also writing to ensure that you have taken necessary steps to locate *Brady* material and provide it to the defense as soon as you learn of it. *See* ABA Standards for Criminal Justice, Prosecution Function, § 3-3.11(a)(c) (3d Ed. 1993) DISCLOSURE OF EVIDENCE BY THE PROSECUTOR. If I do not hear otherwise from you, I will presume that you have taken all of the actions listed in this letter.

**A.     SPEAK TO ALL MEMBERS OF THE "PROSECUTION TEAM."** It is likely that many other people have worked on the case, either in your office or in an investigative capacity. You should speak to anyone who has worked on the case and determine whether they possess any information or have made any promises that constitute *Brady* or *Giglio* material. People you should speak to include:

• **ALL EMPLOYEES OF THE U.S. ATTORNEY'S OFFICE INVOLVED WITH THE CASE**. If any attorney in your office has knowledge of *Brady* or *Giglio* material, that knowledge will be attributed to the entire office. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) ("The prosecutor's office is an entity and as such it is the spokesman for the Government.")

• **ALL POLICE INVESTIGATORS WHO HANDLED THE CASE**. *See Kyles v. Whitley*, 115 S. Ct. 1555, 1568 (1995) ("[N]o one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that 'procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it.'" (citing *Giglio*))

• **ALL FEDERAL AGENTS WHO WORKED ON THE CASE.** If the FBI, ATF, or any other law enforcement agencies participated in the investigation of this case, those agents are part of the prosecution team. *See United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979) ("extensive cooperation between the investigative agencies convinces us that the knowledge of the state team that [witness]'s lawyer was paid from state funds must be imputed to the federal team."); *United States v. Spagnoulo*, 960 F.2d 990 (11th Cir. 1992); *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984) ("[J]oint state-federal drug investigations are quite common, and prosecutors should give some thought to these potential problems of coordination. Being forewarned, they should not simply assume that they have no responsibility for keeping abreast of decisions made by other members of the team."); *United States v. Safavian 233 F.R.D. 12,* 15 (D.D.C. 2005) ("In the course of their investigation, and in collecting and

reviewing evidence, the prosecutors must ensure that any information relevant to this case that comes into the possession, control, or custody of the Justice Department remains available for disclosure.") ; *United States v. Jennings*, 960 F.2d. 1488, 1490 (9th Cir. 1992) ("There is no question that the AUSA prosecuting a case is responsible for compliance with the dictates of *Brady* and its progeny. This personal responsibility cannot be evaded by claiming lack of control over the files or procedures of other executive branch agencies."(citations omitted)).

• **ANY LABORATORIES OR OTHER AGENCIES THAT DID TESTING AS PART OF THE INVESTIGATION.** By talking to the investigating officers and agents, you should be able to determine whether any serology, fingerprint testing, ballistics, or other analysis was requested in the case. If such testing was requested, you should contact the laboratories responsible to determine if their results are exculpatory. *See United States ex rel. Smith v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985); *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964).

**B.    REVIEW ALL CASE FILES MAINTAINED BY YOUR OFFICE AND ANY LAW ENFORCEMENT AGENCIES TO ENSURE THAT ALL *BRADY* MATERIAL IS DISCLOSED TO THE DEFENSE.** Sometimes police officers or law enforcement agents will not provide the prosecution with all of the information collected during their investigation. Nonetheless, you are responsible for reviewing all of the information in their investigative files, and you must make sure that all exculpatory material is turned over to the defense. *See, e.g., Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002).

**C.    INVESTIGATE YOUR WITNESSES.** Material that impeaches a government witness must be disclosed to the defense, and any impeachment material that you possess or can access easily. There are a few things you must do to guarantee that you meet your *Brady* and *Giglio* obligations:

• **EXAMINE THE PERSONNEL FILES OF ALL INVESTIGATING AGENTS WHO MAY TESTIFY AT TRIAL.** If there is impeachment evidence regarding any officers involved with the investigation of the case, especially those who may testify at hearings or at trial, it must be disclosed to the defense. *See, e.g., Nuckols v. Gibson*, 233 F.3d 1261 (10th Cir. 2000); *United States v. Muse*, 708 F.2d 513 10th Cir. 1983); *United States v. Brooks*, 966 F.2d 1500 (D.C. Cir. 1992). Thus, you should search the personnel files of all officers involved with the case for such evidence.

• **EXAMINE THE PERSONNEL FILES OF ALL PROSECUTION WITNESSES WHO WORK FOR THE GOVERNMENT.** If any prosecution witnesses work for other branches of the government, you should search their personnel files for impeachment evidence, as with the files of law enforcement officers. *See, e.g., United States v. Deutsch,* 475 F.2d 55 (5th Cir. 1973), overruled on other grounds by *United States v. Henry,* 749 F.2d 203 (5th Cir. 1984) (holding that contents of postal worker's personnel file, if they could be used for impeachment, would constitute *Brady* material)

• **SEARCH ALL CRIMINAL RECORD DATABASES TO WHICH YOU HAVE ACCESS FOR CRIMINAL RECORDS OF POTENTIAL PROSECUTION WITNESSES.** I presume that you have checked both local and national databases for any criminal convictions of government witnesses. *See United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991) (holding that failure to search a

local criminal database for informant's criminal convictions is *Brady* violation); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980) (holding that failure to run FBI or NCIC checks on a prosecution witness constitutes a *Brady* violation).

• **ASK THE FBI, DRUG ENFORCEMENT AGENCY, AND METROPOLITAN POLICE DEPARTMENT IF THEY HAVE FILES ON ANY OF YOUR WITNESSES.** Even if you are unaware of deals that your witnesses have made with law enforcement agencies, such deals are *Brady* material and must be disclosed to the defense. *See, e.g., In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 896 (D.C. Cir. 1999) ("[P]rosecutors in this circuit are responsible for disclosing *Brady* information contained in MPD files … . The same is true for files of the FBI and DEA…") I presume that you have spoken with all of these agencies to ensure that they have not made any deals with or payments to any of your witnesses.

• **EXAMINE THE PRE-SENTENCE REPORTS AND PROBATION FILES OF ALL WITNESSES.** Exculpatory information in a witness's probation file, including the witness's criminal record or personal information that could be used

I ask that you turn *Brady* material over as soon as you learn of it. Pre-trial disclosure of *Brady* is consistent with the recommended legal, professional, and ethical duty of a prosecutor. I understand that this request places additional affirmative burdens on you to investigate and determine potential difficulties in the prosecution case. However, prompt disclosure of *Brady* material will facilitate a fair and efficient trial within the constitutional requirements of the Due Process Clause.

This letter serves as my understanding of the obligations of United States Attorney's Office under *Brady*. If your understanding of your *Brady* obligations diverges from the parameters of this letter, please let me know so that I can determine whether litigation of this issue is necessary. If I do not hear from you, I will assume that your understanding of your obligations under *Brady* conforms to the duties set forth in this letter. Consequently, if it is later revealed that *Brady* material was not timely disclosed, a court may draw the conclusion that the United States Attorney's Office has acted in reckless disregard of its *Brady* obligations, if not demonstrated actual bad faith.

I am also making a request for any *Brady* materials, including those not previously disclosed and/or discovered, including but not limited to:

1.  All prior convictions and juvenile adjudications of all government witnesses.  <u>See Lewis v. United States</u>, 393 A.2d 109 (D.C. 1978), <u>aff'd on reh.</u> 408 A.2d 303 (D.C. 1979).  I also note a problem that I had recently where a NCIC printout <u>did not</u> contain all convictions for a witness and I request a more thorough search than just a NCIC printout, particularly given our close proximity to neighboring jurisdictions.

2.  All information in the possession of the government indicating that (a) any government witness has had a pending juvenile or criminal case on or since the offense in this case; (b) any government witness has had an arrest, guilty plea, trial, or sentencing on or since the date of the offense in the present case; (c) any government witness has been on juvenile or criminal parole or probation on or since the date of the offense; (d) any evidence of bias of government witnesses or any consideration given a witness in return for cooperation with the government; and (e) any government witness now had or has had any other liberty interest that the witness

could believe or could have believed might be favorably affected by government action. With respect to this information, we request docket numbers, dates and jurisdictions for all such cases. See Davis v. Alaska, 415 U.S. 508 (1974; Washington v. United States, 461 A.2d 1037 (D.C. 1983).

3.      Any prior inconsistent, non-corroborative, or other witness statements which will not reflect the witness' trial testimony. See United States v. Enright, 579 F.2d 980, 989 (6th Cir. 1978).

4.      All information that any government witness and/or informant's faculties were impaired in any way, or that mental state of the witness/informant is below normal or in any way abnormal.

5.      All information that any government witness and/or informant was under the influence of alcohol, narcotics, or any other drug at the time of the observations about which the witness will testify or that the witness faculties of observation were impaired in any way.

6.      All information that any government witness has been or is a police informant either at the time of the offense and/or through the day of trial. If any witness is, or has been, an informant, then:

        (a)     disclosure of the length and extent of the witness' informant status;

        (b)     the amount normally paid to the informant;

        (c)     non-monetary assistance also provided to the informant, including, but not limited to, assistance in avoiding of minimizing harm from charges pending against the informant, such status having existed either at the time of the offense and/or any other time through the day of trial;

        (d)     all benefits or promises of benefit or statement that benefits would not be provided without cooperation that were made to the informant in connection with this case, whether or not fulfilled. "Benefits" refers to any monetary compensation, assistance of the prosecutor or the Court concerning pending charges against the informant, or any other sort of consideration of value;

        (e)     the nature of assistance provided in the past, including the number of occasions and form of help.

        See United States v. Bagely, 105 S.Ct. 3375 (1985); Springer v. United States, 388 A.2d 846 (D.C. 1978).

7.      All deals, benefits, or promises of benefit, threats, or statements that benefit would not be provided without cooperation that were made to any government witness in connection with this case and any information tending to show the unreliability of a government witness, or which would tend to discredit the testimony of a government witness and any information which tends to show a government witness' corruption, see Matter of C.B.N., 499 A.2d 1215 (D.C. 1985), including anything in police officers' personnel files indicative of corruption, see United States v.

Brooks, 296 U.S. App. D. C. 219, 966 F.2d 1500 (1992). See Giglio v. United States, 405 U.S. 150 (1972); Springer, supra.  "Benefits" is defined in point (6)(d), supra.

8.      Any failures by any witnesses to provide the police or the government with information testified to at trial.

9.      Identification.  The names and addresses of any person(s) who:

    (a)      identifies some other person other than the defendant as a perpetrator of the alleged offense.  See Cannon v. Alabama, 558 F.2d 1211 (5th Cir. 1977), cert. denied, 434 U.S. 1087 (1978); Grant v. Alldredge, 498 F.2d 376 (2d Cir. 1974);

    (b)      failed to identify the defendant as a perpetrator of the alleged offense when asked to do so in any identification procedure. . See Gibson v. United States, 566 A.2d 473 (D.C. 1989);  United States ex rel. Meers v. Wilkins 326 F.2d 135 (2d Cir. 1964);

    (c)      gave any description(s) of the perpetrator of the alleged offense which in some material aspect, e.g., weight, height, race, clothing, complexion, age, etc., differs from the defendant. See Frezzel v. United States, 380 A.2d 1382, 1385 (D.C. 1977), cert. denied, 439 U.S. 931 (1978).  See also Gibson v. United States, 566 A.2d 473 (D.C. 1989); Jackson v. Wrainwright, 390 F.2d 288 (5th Cir. 1968).

10.     The names and addresses of all persons who would contradict or impeach any government testimony or other evidence.  See Gibson v. United States, 566 A.2d 473 (D.C. 1989).

11.     All information known to the government which is favorable to the defense, whether or not technically admissible in court, and which is material to the issues of guilt and/or punishment. This includes all information my client was not involved in the alleged offenses and/or that the requisite elements required to prove any of the charged offenses cannot be met.

12.     For any police officer or law enforcement official that may be called as a witness by the government, I request the following information:

    (a)  A list of all complaint letters during tenure of service with MPD or any law enforcement agency.

    (b)  A list of all Citizen Complaint reports (PD Form 99) filed during tenure of service with MPD or respective law enforcement agency.

    (c)  A list of all Citizen Complaint Review Board (CCRB) cases, handled by the CCRB or transferred from the CCRB to the MPD for investigation and resolution pursuant to Special Order 95.10 of the MPD.

    (d)  A list of all dates of discipline by the MPD or other relevant authorities.

    (e)  A copy of the logbook of Internal Investigations, Office of Professional Responsibility, for the years when a member of the MPD.

(f)  Any entries made in the MPD Early Tracking System.

(g)  A list of all PD 150a's, and copies of the PD150a's thereof, for incidents involving that officer.

(h)  Any and all e-mail messages sent via the Mobile Digital Computers by any officer involved in this case which contain references to race, gender, sexual orientation, religion, or any other classification, or which may otherwise contain offensive, objectionable, or derogatory comments.  I also request the names and e-mails for any officers involved in this case who are being investigated in connection with e-mail transmissions. This request includes, but is not limited to, any e-mail transmissions regarding the event at issue in this case.

13.   Pursuant to the ABA Standards for Criminal Justice, § 11-2.2 (The Prosecution Function), and the principles enunciated in United States v. Hinton, 203 U.S. App. D.C. 187, 197-98, 631 F.2d 769, 779-80 (1980), I request early disclosure of all Jencks material, so that any issues concerning disclosure may be resolved in advance, counsel will have adequate time to review the material, and there will no delay of court proceedings while counsel reviews the material, considers any discovery or Brady ramifications, and prepares to use the material in cross-examination.  To single out one recurring problem, tapes of radio communications take quite a lot of time to listen to and/or transcribe, as we am sure you have also discovered.  I also request that you diligently preserve all Jencks material.

14.   All information pertaining to perjury by any government witness at any time, whether or not adjudicated and whether or not in connection with this case and all information that any government witness has made prior false accusations, including but not limited to prior complaints to the police or law enforcement agencies that did not result in a conviction.  See Mooney v. Holohan, 294 U.S. 103 (1935); Sherer v. United States, 470 A.2d 732 (D.C. 1983) cert. denied, 469 U.S. 931 (1984).

15.   Any information regarding any prior "bad act" of a government witness which may bear upon the veracity of the witness with respect to the issues involved in the trial. See Lawrence v. United States, 482 A.2d 374 (D.C. 1984), Galindo v. United States, 630 A.2d 202 (D.C. 1993).

16.   All other information tending to show a government witness' bias in favor of the government or against the defendant or which otherwise impeaches a witness' testimony (including C.C.R.B. complaints against police officers and closed C.C.R.B. cases whether resolved for or against the officer, that involves facts similar to those of this case).  See United States v. Bagley, 473 U.S. 667 (1985); Jenkins v. United States, 617 A.2d 529 (D.C. 1992).

17.   The names and addresses of all witnesses who do not fully corroborate the government's case or would serve to contradict or impeach the government's evidence.  See Giles v. Maryland, 386 U.S. 66 (1967).

18.   Any indication of threats or acts of aggression toward the defendant by the complainant or decedent, and any information that the complainant or decedent had possession of any weapons at the time of the incident.

I am specifically requesting the following documents and information regarding the government civilian witness(s) in this case:

19.   The name and address of each government civilian witness;

20.   The case number and name of the prosecutions in which any government civilian witness utilized in this case has previously been utilized as a government witness;

21.   The case names and numbers of any trials or evidentiary hearings at which the government civilian witness has testified concerning his own prior criminal activity, payments or rewards provided him by the government, efforts made to induce others to participate in criminal activity, or other purported law enforcement-related matters;

22.   Any ledger, sheet, or other document which details the sums paid or benefits provided to the government civilian witness or his family in this and other cases in which the informant assisted the government and the purpose of each such payment;

23.   Any information, whether or not memorialized in a memorandum, agent's report or other writing, regarding promises of immunity, leniency, preferential treatment or other inducements made to the government civilian witness or any family member, friend or associate of the witness in exchange for the witness's testimony or cooperation, including the dismissal or reduction of charges, assisting in matters of sentencing or deportation, promises or expectancies regarding payments for expenses or testimony or eligibility for any award or reward; In addition to information regarding payments, promises of immunity, leniency, preferential treatment or other inducements made to the government witnesses, any records or information regarding payments, promises of immunity, leniency, preferential treatment offered or afforded to any family member, friend or associate of any prospective witness in exchange for said witness cooperation.

24.   Any information or records concerning any actual or implied threats of investigation or prosecution (including deportation, exclusion, etc., by INS) made by the government to any prospective government witness or family member or associate of the witness, including information as to the underlying conduct precipitating such investigations.

25.   Any statement made, information or document provided by a prospective government witness that conflicts in part or in whole with: (1) the statement of another prospective witness, (2) a prior statement made by the same government witness with regard to the subject matter of the expected trial testimony of witness, or (3) any other document or witness.

26.   The name and current whereabouts of any witness to the underlying events of this case whom the government does not anticipate calling as a witness at trial and a copy of any statement made by or summary of an interview with such a witness.

27.     Any report, document or information which details the criminal activities of the government civilian witness which were undertaken by him without the authority or approval of the government, but for which the government has elected, formally or informally, not to prosecute;

28.     FBI rap sheet, NCIC printout, NADDIS, EPIC, NLETS, ATS, TECS, and any other records available to the government reflecting the arrest, conviction and investigative history of the government civilian witness;

29.     Information concerning prior misconduct by the government civilian witness in the performance of his role as an informant including: any prior refusal of the witness to testify for or assist the government; any prior allegation that the witness entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and any prior "blackballing" of the witness by any law enforcement agency;

30.     Information concerning misconduct by the government civilian witness other than in his role as a cooperating witness, including misconduct that reflects a lack of candor, truthfulness or law-abiding character of the witness, such as uncharged criminal conduct or fraud;

31.     All information, records and transcripts which in any way indicate or reveal that any prospective government witness, in connection with this or any other case, has provided untruthful, false, misleading, incomplete, or inaccurate information or testimony to:

        a. Any state or federal law enforcement officer or agency,

        b. Any state or federal grant jury,

        c. Any state or federal trial court while testifying at trial and/or any related or preliminary proceeding;

32.     Information reflecting the nature and extend of assets obtained by the government civilian witness in connection with his illegal activities;

33.     Any "records" maintained by law enforcement agencies relating to the government civilian witness, including records that the witness was:

        a. Given a code name,

        b. Given assumed/false identify,

        c. Reasons for cooperation,

        d. Given a polygraph examination,

        e. Briefed on entrapment,

        f. Contracts executed with any law enforcement agency,

g. Any release forms executed by the witness,

h. Records revealing the witness was advised to pay Federal Income Taxes,

i. Records that he could not violate the law,

j. Records which require him to protect his false identity,

k. Records that the witness cannot use any illegal drugs,

l. Records that the witness consented to recording any conversation with any party;

34.     If given a polygraph exam, the results of any polygraph examination performed on any potential government witness as well as any information concerning the failure of any potential government witness to submit to a polygraph examination;

35.     Any government agency files or other information revealing matters relevant to the government civilian witness' credibility, mental or physical health, narcotic or alcohol use, or any other dependency;

36.     All information and records revealing any potential impairment of the capacity of any prospective government witness to observe, recollect and testify about the events giving rise to the charges filed in this case including impairments or sight, hearing, memory, language, or any other physical or psychological disability;

37.     All information and records indicating that any prospective government witness (1) may have suffered from any mental or emotional disease, disorder, illness, or defect at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any such mental or emotional disease, disorder, illness or defect at any time within the past five years;

38.     All information and records indicating that the prospective government witness (1) may have used cocaine, marijuana, another controlled substance, used alcohol to excess at any time during the time span alleged in the indictment filed in this case, or (2) sought to received treatment for any substance abuse problem (including alcohol) at any time within the past five (5) years;

39.     Applicable records of the United States Probation, CSOSA or probation department if the witness has been placed on probation or a Pre-Sentence Investigation "PSI" has been conducted.

40.     Any evidence that would support a defense to the charges in this case.

OTHER REQUESTS

The names and addresses of all government witnesses. *United States v. Holmes*, 343 A.2d 272, <u>reh.</u> <u>denied</u>, 346 A.2d 517 (D.C. 1975)."

I request to be informed of any plea offer in this case.

CONCLUSION

For purposes of this letter and any related litigation, "information" refers to all documentary, tangible, or oral material, including, but not limited to, statements by witnesses, whether or not recorded or otherwise memorialized, grand jury testimony, and such reports of investigation or personal notes of investigators. Such information is "known" to the government if known to you personally or known to any other prosecutor or law enforcement agent, or is information which you could acquire actual knowledge of through the exercise of due diligence in responding to these inquiries. If such information is disclosed by you, please disclose all supporting documents or objects as well as the names and addresses of all witnesses having knowledge of the information disclosed. If you elect not to disclose the exculpatory information requested herein until the day of trial, please advise me of that decision promptly, and secure the presence at trial of witnesses having such knowledge, so that delay of the trial will not be necessary. Finally, as you know, the duty to disclose is an ongoing one, continuing until final disposition of the case. If, prior to or during trial, you discover additional evidence or material previously requested or ordered, which is subject to discovery or inspection under the rules, you should promptly notify me of the existence of the additional evidence or material. If you have any questions or require any clarifications as to any of my requests or the information contained in this letter please contact me as soon as possible. Your prompt attention to these matters will be appreciated.

Sincerely,

*Michael E. Lawlor*

Michael E. Lawlor